May it please the Court, my name is Jim Sullivan, and I represent Swift Transportation Co. out of Arizona, and we're here today asking the Court to reverse the District Court's order awarding plaintiffs' attorney's fees relating to a ruling on the summary judgment motions. I'd ask that I get about two minutes for rebuttal, and I'll try to complete my remarks after the question, and I will, Your Honor. The District Court erred in this case in awarding attorney's fees based solely upon a ruling that it made in a summary judgment motion finding that certain provisions of Swift's old lease violated the Truth in Leasing Regulations. They entered an order, didn't they? That they entered an order, and then it entered an order in September of 2007, and it became a judgment in September of 2009. And the reason that we're here today is because based upon the well-established Supreme Court precedent, the Court erred in finding that the plaintiff was a prevailing party. In order to be a prevailing party under all of the attorney's fee statutes that require that language, the party must get some sort of relief on the merits that materially alters the legal relationship between the parties by modifying the defendant's conduct toward the plaintiff at the time that the I use Farrar, don't I, to determine this? Yes. Farrar is absolutely the case on point. It provides all the standards. It has a couple of tests to it. Pardon me? The first part of the Farrar test, there was a declaratory judgment entered. That would satisfy that part of the test, wouldn't it? No. I think that if you look at Farrar, you also have to look at Rhodes, Your Honor, because I understand, but it seems to me there was a declaratory judgment that was entered. Yes, there was. Yes, there was a declaratory judgment that was entered. And if I look at Farrar, it must obtain an enforceable judgment against the other party. Judgment was entered. So the first part's done. Well, an enforceable judgment. It was enforceable, wasn't it? Your Honor, I don't believe that it's – when you look at the – I mean, I'm just trying to apply the test that I'm told I'm supposed to apply. I think if you – I don't think the Declaratory Judgment Act has much applicability here. But if you look at the declaratory – Well, I appreciate you don't, and I know what your argument is. But all I'm trying to do is suggest that I'm trying to apply the appropriate test. So you tell me what test. I thought Farrar – or I call it Farrar. I'm from Idaho. Farrar versus Hobby had some pretty good language there about what I need to look at. And so the first part of the Farrar test seemed to be that they must have an enforceable judgment. I agree, your Honor. And I saw there was a declaratory judgment. So I'm just going on. There are other parts of the test which I think we'd have to talk about, but that's the first part. And I won't – I agree, your Honor. I won't belabor the point. But I was going to say that the Declaratory Judgment Act does provide some instruction here, because I don't believe that a declaratory judgment in and of itself is a self-executing judgment. A declaratory judgment allows somebody under the rule to come back later if the declaration isn't followed to get an injunction that would compel some conduct. Let me ask you the ultimate question. Isn't it true that until we get to this declaratory judgment was not lawful? We advocated that it was lawful, and primarily because we were I'm just trying to look at what you were arguing. You argued the old form release was lawful, and not until the declaratory judgment came did that argument cease. In order to understand what we were doing, we were debating in the summary judgment motion what the applicable standard was to evaluating the lease. We argued that it was a lesser standard of substantial compliance. They argued that it was strict compliance. We did not prevail on that issue. I really don't believe that that's exactly what the question is. In my book, it wasn't until that summary judgment with the declaratory judgment that one could say you are prevented your company from returning to pre-2003 practices. You argued that that was just fine until that judgment was entered. From that time forward, your company was prevented from returning to those practices. Isn't that true? I don't think that you're right, Your Honor. There wasn't an order. But to suggest that we were arguing that the leases complied with the law ignores the fact that we were arguing about what the applicable standard was. We argued that the applicable standard was substantial compliance and that they substantially complied. We did not argue that we didn't have an argument that if it required strict compliance that we complied. Did you have to change the lease as a result of the declaratory judgment? Absolutely not. The leases had been changed for seven years by the time the judgment was entered. The basis of the district court's finding you a prevailing party was that you argued about the old lease and you could have gone back to the old lease except that because you argued about it, you entered a declaratory judgment. I think there is a little bit of case law for you, although not perhaps as strong as there are for the other side. What do you think about Richardson? Is that your best case, Richardson versus Continental Grain Company? I don't know that we cite the Richardson case. In terms of what happened here, the lawsuit was filed in June of 2002. By 2003, within seven months, Swift had changed its leases. We continued to argue that the lease complied. We were facing a substantial class action, millions of dollars worth of damages. We argued that the standard was substantial compliance. If we would have prevailed on that issue, we would have been right. We went ahead and changed the leases to strict compliance anyway. By the time that the judgment was entered in September or October of 2009, the leases had already been changed for six or seven years. There was nothing in that order that compelled Swift to do anything. And there was nothing that caused Swift to change its conduct. We went ahead and complied with the strict standard that the defendant, that the plaintiff argued. We took the position that the lesser standard applied, but there was no evidence that we were ever going to go back to a lesser standard. The Court made the ruling on what the standard was, and that's what we did. But you continued to argue that you had substantially complied before. So if there hadn't been, I guess if there hadn't been the judgment, you would have gone back, wouldn't you? Could have. Could have. I'm sorry. Well, we could have, but I mean, I don't think that would be the case. And I would make a point. This case, Your Honor, was about technical, highly technical violations. Had the plaintiff simply written a letter to Swift saying, we don't think you substantially comply, Swift would have had no problem doing it. There was no harm to anybody. There was no harm to Swift in changing the leaf. It was nothing off Swift's back to go ahead and comply with their interpretation. And the plaintiffs were not harmed. And this Court and the district court both found that the plaintiff was not harmed. So But I guess what I'm trying to make sure I understand is your argument, because it seemed to me that the plaintiff continued to assert that it had been economically harmed by the old form leases, that your company considered, continued to assert that the old form lease complied with the statute, and only when the declaratory judgment was entered was that controversy settled. May I respond, Your Honor? Sure. That's why, that's my understanding. That's why I want you to respond. And, again, they argued a strict compliance standard. We argued that the standard was far lower, a substantial compliance. And it's a very fact-intensive issue, Your Honor. The things that they say weren't in the document were all in the orientation materials. We gave them all the stuff the Court said we didn't give them. It just wasn't in the agreement. So there was no harm, no foul. So they argued that because it wasn't actually in the document, even though they were told it, we violated it because it wasn't in the lease. And so we argued that, well, we complied. We substantially did what we were supposed to do. But plaintiff, if you want us to put it in the agreement, we'll do it. It's no big deal. We do it that way. They had the information. That's why the district court said you weren't damaged. You're in the red. Thank you. Good morning. Daniel Cohen of the Cullen Law Firm, Washington, D.C., for the Appalachians. This Court confirmed Judge Rosenblatt's decision based on the reasons, the case law, the application of the case law to the record set forth in Judge Rosenblatt's attorney fee order. Judge Rosenblatt presided over this case for over ten years at the time he was intimately familiar with the facts, the issues, the arguments, the parties, the postures they had taken. And he had seen all of Swift's arguments, all of the arguments that we've heard here today. And he decided that under Farrar, and he cited all the cases, there's no question that he, there's no air of lung in the cases that he decided. The only issue raised by Swift is that they disagree with his ultimate conclusion that his decision did benefit Swift's truckers. So does the decision turn on what standard of review we place on this idea of the district court to determine that you are the prevailing party? We submit that it does. It does. But if we do de novo review, then we can look at it again, right? You would, our position is you would subject the legal standards used by Judge Rosenblatt to a de novo review. But the way he applied those cases to the facts and the arguments and his finding that there was a material benefit to the truckers is a question of his and based on his familiarity with the evidence and the arguments. And he very clearly laid out his reasoning and his decision. And we submit that that should not be second-guessed. But ultimately, it's not an argument by Swift that the judge missed the law. They just don't like the conclusion Judge Rosenblatt reached. Now, Judge Rosenblatt did settle disputes that were ongoing at the time that benefit the benefited Swift's truckers at the time the judgment was entered. Swift had taken the position that there was a substantial compliance standard and that it had met the substantial compliance standard. Judge Rosenblatt rejected our proposal for a strict compliance standard, but he found that even under a substantial compliance standard, Swift did not comply. That has a material benefit to Swift's truckers. It had it at the time, it has it today, and it has it for the enduring future. Well, I think your biggest question comes in, even if he gives the declaratory judgment, is that an available form of relief? You mean under the statute, under 49 U.S.C. 14704? Yes, it does. This Court's decision in Fulfillment v. UPS states that 14704 authorizes actions for violation of the MCA, the Motor Carrier Act, and attendant regulations, which includes the truth in leasing regulations which were at issue in this case. We established that Swift violated the truth in leasing regulations, and it culminated in a declaratory judgment, which Swift did not appeal in the last time we were here, which was Swift 2. 14704E provides the District Court shall award a reasonable attorney's fee under this section. The District Court shall tax and collect the fee as part of the cost of this action, of the action. So your idea is that that particular case eliminates our need to determine whether this is really an injunction or damage is sustained by the person, which is under 14704A1 and 2? Well, those words— I didn't quite see that case getting there. Well, Fulfillment says precisely that. It says that the statute allows for vindication of rights under these regulations, and it's our rights under these regulations, under the statute, that we're entitled to have fees taxed as part of the cost of the action. It's the regulations, not those remedies. Did you get injunctive relief? We did not. Did you get damages? No, we did not.  We did. So how do you get the fees? We get the fees because they violated the truth-in-leasing regulations, which are actionable under 14704. The statement about injunctive relief or damages is not exclusive of any remedies that are available to vindicate the violation of the truth-in-leasing regulations. And again, we got a declaratory judgment, and Swift did not appeal that declaratory judgment. Someone might argue that what you got was a declaratory judgment that gets you nothing except the opportunity for future relief in some other case, and is that enough? I think there's a case called Richardson, which he didn't know, but maybe you know, where the person received some declarations in the case that going forward in future cases would benefit him. There'd be collateral estoppel. But in your case, you don't really have any current benefit. It's a future benefit, kind of like collateral estoppel. Well, as Judge Rosenblatt found, the declaratory judgment settled the dispute over whether Swift could use the substantial compliance test. And whether there, in Judge Rosenblatt's view, there was a risk that they might revert to their old practices. So we, under the Declaratory Judgment Act, it says that the courts can declare the rights of the parties. It was a case in controversy that was right. Then what's going to happen? If they go back to their old lease, then what do you do? You file a new suit, and you say, hey, you already lost this one, res judicata, and you get, so you have a future benefit. But you don't have a benefit right now, because you have no damages. You have nothing right now. Well, it's a benefit at the time, because it settles the dispute. And as Judge Rosenblatt said, yes, maybe it's a stopping point. I might have to go back and get an injunction. But it gives me the basis to get the injunction. I don't have to go back and litigate over 10 years, as we did here, to declare the rights of the parties. The declaratory judgment did have a meaningful benefit for swift truckers at the time it was entered. For this case, the standard of review seems to be very important, because I think I could go either way. And if the standard of review is abuse of discretion, and I could go either way, you uphold the district court. But in deciding something like what is a prevailing party, that might be just a legal question. In which case, it's de novo. The prevailing party has components. And what I can point to is this Court's decision in Kerr v. Screen Extras Guild, which Judge Rosenblatt cited in his decision. Granted, it was decided under— It's an only but goodie. It's an only but goodie. It's a good one. And it was decided under a different statute, the Labor Management Reporting and Disclosure Act, requiring that the successful plaintiff confer a substantial benefit on the other members of the union. In Kerr, this Court held the primary question, therefore, is whether the district court abused its discretion, including that the prosecution of the second disciplinary case conferred no substantial benefit upon the guild's members. So we do point to Kerr as authority for that standard. Can you explain to me exactly why, under the correct form of the lease, your clients are so much better off, rather than the one that they were using? Well, we never said that we were better off. We challenged that, but that's the law of the case now, that their new lease complied. But as Judge Rosenblatt— No, no, no. I'm trying to—the difference between the leases, the lease provisions— Oh, well, yeah. The old lease provided no disclosures at all regarding markups that Swift was adding to chargebacks. And it had an escrow provision that was so broad, as one court held, when you provide for everything to be taken out as an escrow, you provide for nothing. So we did get those benefits. And it's important to remember what Judge Rosenblatt held here. I mean, he's the trial judge, and he knew what Swift's arguments were. He found that the material benefit at the time the judgment was entered is that it would meaningfully preclude Swift from reinstating the old leases. That's the trial judge's discretionary decision in this case. He was the one in the best position to make that finding. And we submit that it's subject to the discretionary standard. That's as to the original question on prevailing party. Do you believe that it is a discretionary decision as to whether one can get fees for a declaratory judgment? Yes, as long as the judge applies the correct legal standards. Well, it seems to me that we're applying there quite a different idea. We're saying 14704A1 and 2, which only talk about civil action for injunctive relief or civil action for liable for damages, that somehow a declaratory judgment can be that. I'm having a tough time understanding why that's a question of fact. Well, that may be a question of law. But again, if you go to the fulfillment decision, it goes back to the history of the I read fulfillment, but I'm still trying to figure out. I'm not sure fulfillment exactly applies here. And so I'm still trying to figure out how we get this. I mean, my colleague laid it out to you pretty fairly. It seems to me you've got prospective opportunity to win if they ever go back. But I don't know what you want here. Well, I can say it no better than Judge Rosenblatt did, and he was the trial judge. He found that it meaningfully precluded SWIFT from reinstating the old leases. As you discussed earlier, if he hadn't done that, they could have gone back. All right. Thank you. I've given you more than your time, as I did him. Thank you. Thank you. I'll give you 30 seconds to reply if you want. Your Honor, I'll take it. I appreciate it. I won't spend a lot of time on the first issue we discussed because I didn't get to that point about the statute. But I think it's important to recognize that the benefit here, the benefit we're talking about is what did the benefit of the plaintiffs on appeal get. Two of the plaintiffs are named plaintiffs. They don't work for SWIFT anymore. There's no indication they ever will again. That declaratory judgment is of no benefit to them. As to OIDA, did OIDA directly benefit? The word directly is very important. They're an association. I leave that to you. I've not seen a single case where somebody directly benefited by an associational standard. Thank you. Appreciate your argument. Thank you very much. Case 13-15851, Owner-Operator v. SWIFT, is now submitted. We'll turn to case 14-10142, USA v. Manual.
judges: Restani, Schroeder, Smith